| | |
|---|---|
| 1 | The Law Offices of Leon Ozeran |
| 2 | Leon Ozeran, Esq., CA Bar No.: 296071 |
| 3 | 8200 Wilshire Blvd., Suite 400 |
|   | Beverly Hills, CA 90211 |
| 4 | Tel: (310) 461-3730 |
|   | ozeranlaw@gmail.com |
| 5 | Attorney for Plaintiff |
| 6 | DHARAN KUMAR |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DHARAN KUMAR

  Plaintiff,

vs.

ALLY FINANCIAL INC;
MASERATI AND ALFA
ROMEO OF PUENTE HILLS
and DOES 1-20
inclusive;

  Defendants.

Case No.:

**CLASS ACTION**

**CLASS ACTION COMPLAINT FOR:**

1. **VIOLATION OF BUSINESS & PROFESSIONAL CODE §17200;** *et seq.*;
2. **VIOLATION OF CALIFORNIA MOSCONE VEHICLE LEASING ACT Sec. 2987** *et seq.*;
3. **VIOLATION OF AMERICAN WITH DISABILITIES ACT;**
4. **FRAUD AND DECEIT.**

**JURY DEMAND**

Plaintiff Dharan Kumar ("Plaintiff") individually and on behalf of all others similarly situated, by and through his attorney, hereby brings this Collective and Class Action Complaint against ALLY FINANCIAL INC ("Ally"), MASERATI & ALFA ROMEO OF PUENTE HILLS, and DOES 1-20 (collectively, "Defendants") to seek redress for Defendants' deceptive and unfair practices as it relates to Ally's Motor Vehicle Lease Agreement **(MVLA)**.

## PARTIES

1. At all relevant times, Plaintiff Dharan Kumar is a resident of the State of California. On 04/30/2021, he leased a 2020 ALFA ROMEO GIULIA ("Plaintiff's vehicle") from MASERATI & ALFA ROMEO OF PUENTE HILLS.

2. Ally's financial operations in connection with the Lease Agreements are handled by Ally's office headquartered in Detroit, MI.

3. All acts and omissions of Ally and its employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the course and scope of their duties, and therefore Ally is responsible for Plaintiff under the doctrine of Respondeat Superior and/or other doctrines.

4. Defendant MASERATI & ALFA ROMEO OF PUENTE HILLS Dealership ("Dealer") is an independent car dealer conducting sales and leases of vehicles in California.

5. Plaintiff does not know the true names and capacities of all above-mentioned entities, whether corporate, partnership, associate, individual, or otherwise of Ally issued herein as Does 1 through 20.  Plaintiff will seek to leave to amend this Complaint to set forth the true names and capacities of the fictitiously named Ally together with appropriate charging allegations when ascertained.

6. All acts of corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of the corporate employer.

7. Each Defendant, whether actually or fictitiously named herein was the principal, agent (actual or ostensible), or employee of Ally and/or Dealer and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth because of which each Defendant is liable to Plaintiff for the relief prayed for herein.

**JURISDICTION AND VENUE**

8. Ally is one of the largest financial companies in the US. It has thousands of affiliates throughout the USA and works with multiple dealerships in California. Thus, Ally has purposefully availed itself of the privilege of conducting activities in the State of California and has established minimum contacts sufficient to confer jurisdiction over them, and the assumption of jurisdiction over Ally will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a).

10. The matter in controversy exceeds $75,000.00, exclusive of interest and costs; and Plaintiff and Defendants are citizens of different states.

11. The claims asserted by the putative class, when aggregated according to 28 U.S.C. § 1332(d)(6), exceed the amount of $5,000,000 as required by 28 U.S.C. § 1332(d)(2).

12. At least one member of the California Class is a citizen of a State different from at least one defendant within the meaning of 28 U.S.C. § 1332(d)(2)(A).

13. The number of members of all putative classes alleged exceeds 100 as required by 28 U.S.C. §1332(d)(5)(B).

14. Defendants are not States, State officials, or other governmental entities under the definition of 28 U.S.C. § 1332(d)(5)(A).

15. Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

16. This Court has supplemental jurisdiction over state claims pursuant to 28 U.S.C. §1367 because the claims arise from a common nucleus of operative facts and thus adjudication of both state and federal claims furthers the interests of the judicial economy.

17. Accordingly, this Court has jurisdiction over the parties and the subject matter of this action, and the venue is proper.

## GENERAL ALLEGATIONS

18. It is a well-known fact that for the last few years, due to inflation and difficulties with manufacturing and delivery of new cars, the demand for pre-owned (used) cars has risen dramatically. As a result of rising demand, the value of used cars has gone up. Leased vehicles' values have begun to exceed the residual values specified in the original car lease agreements. Such an increase in residual value has created a situation where lessees have found themselves in possession of vehicles whose market value is significantly more than the amounts owed on their respective leases, as calculated by Civil Code Section 2987 (Moscone Act).

19. As a result of this increased equity, in the case of a total loss of the vehicle, the insurance companies have been appraising the replacement market value of the car as higher than the remaining loan amount on leased vehicle with Ally, i.e. equity.

20. The equity was created by the appreciation of the vehicle replacement value in excess of the remaining balance of a lessee's loan and shall belong to the lessee. After all, lessees were the ones who purchased the insurance policies and made payments to their policies.

21. However, recognizing an opportunity to receive windfall profit, Ally enacted a policy of deception. Ally began telling Lessees that, in case of a total loss of their lease vehicles, they can no longer purchase the vehicle. Ally based this reasoning Section 32 of the Motor Vehicle Lease Agreement ("**MVLA**"), which it claimed excludes vehicles that suffered total loss accidents from purchase without any restrictions at any time.

22. Ally violated the terms of its own MVLA, and CALIFORNIA MOSCONE VEHICLE LEASING ACT Sec. 2987 that protects the rights of the lessees to buy their vehicles at any time and in any condition. There is no exception for total loss.

23. Ally utilizes the benefits of the above-mentioned deceptive practice by doing as follows: if the auto accident results in a total loss, Ally contacts the lessee's insurance company, and requests the value of the appraisal. If the insurance amount exceeds the outstanding loan, Ally sends the lessees notices advising the lessees that they no longer have the right to buy their cars because their MVLA was "terminated" by Ally. From that point, Ally takes over the settlement process with the insurance companies. Then, Ally provides the insurance companies with the demands equal to the appraised value and instructs the insurance companies to forward the entire payoff amount to Ally. Thus, instead of sending the lessees the excess of payout over the open balance, the insurance companies send Ally the whole amount, denying the lessees funds that are owed to them.

**GENERAL POLICIES OF CAR LEASING CONTRACT V. CAR RENTAL CONTRACT**.

24. <u>In The Case Of A Car Leasing Contract</u>: When leasing a vehicle WITH THE CLOSE-END LEASE, the Lessee follows the procedure similar to buying the vehicle. The difference is that Lessee has *an option to return the vehicle in lieu* of the remaining balance at the end of the lease. That is the only difference. Based on the

terms of the MVLA and Moscone Act, Lessees can buy their vehicles at any time (providing that they will pay off all accrued charges). They can buy the vehicles at will based on contractual and statutory rights, and these rights shall not be denied. The fact that the finance company is listed as the owner of the vehicle is irrelevant. It holds the title in the name of its subsidiary, usually a Vehicle Trust, temporarily for accommodation only. The vehicle represents collateral for the loan to secure the lessee's payments up to the point of the final payment. Thus, the Vehicle Trust is not a "true" owner, but rather a "surety" to hold on to collateral to assure payments. The company will not transfer the title to the lessee until the total amount of the loan is paid off. When the final payment is made and the balance is paid off, the lessor <u>MUST</u> forward the title to the lessee for DMV transfer. That is routine practice.

25. <u>In The Case Of A Car Rental Contract:</u> A vehicle rental company never transfers the vehicle's title to the renter because it <u>is NOT obligated</u> to sell the vehicle at any point. The company retains ownership the entire time. The renter, when entering into the rental contract, pays only for the period it rents. There is no final payment to make and no option to buy the vehicle at any time. The renter does not have any ownership rights or equity regardless of how much he pays.

26. Under Section 2987 of the California Civil Code, the Moscone Vehicle Leasing Act, in a closed-end consumer vehicle lease, the consumer is always entitled to purchase the vehicle during the term of the lease, or at the end of the lease. The Act governs transactions between vehicle lessors and lessees.

27. The Moscone Act discusses a "…lessee's right to early termination of lease contract; conditions; notice." Under Cal. Civil Code § 2987, consumers have the right to terminate their lease early at any time and for any reason as long as the money owed to the lessor is sufficient to cover the payoff amount of the lease.

# TOLLING

## A. Discovery Rule Tolling

28. Class Members had no way of knowing about Ally's deceptive practices concerning the truthfulness of Ally's statements of state and contractual prohibitions of the third-party dealers.

29. Within the period of any applicable statutes of limitation, Plaintiff and the other Class Members could not have discovered through the exercise of reasonable diligence that Ally was hiding its true practices. All applicable statutes of limitation have been tolled by the operation of the discovery rule.

## B. Fraudulent Concealment Tolling

30. All applicable statutes of limitation have also been tolled by Ally's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

## C. Estoppel

31. Ally was under a continuous duty to disclose to Plaintiff and other Class Members the true character, quality, and nature of their Lease Agreements and pay-off policies, including Ally's claim that in case of a total loss, the lessees would lose their right to purchase their vehicles.

32. Ally knowingly, affirmatively, and actively concealed true facts from consumers.

33. Based on the foregoing, Ally is estopped from relying on any statutes of limitations in defense of this action.

# EQUITABLE RELIEF

34. Absent an equitable injunction enjoining Ally's conduct alleged herein, Plaintiff, the Class, and the public will be irreparably harmed and denied an effective and complete remedy because they face the real and tangible threat of future harm

emanating from Ally's ongoing conduct, which cannot be remedied with monetary damages.

35. Plaintiff does not know at this juncture whether the Court will accept a model for legal damages that Plaintiff will proffer in the future at the appropriate time, or whether the Court will find that any such model adequately compensates Plaintiff's and the Class's losses. Accordingly, Plaintiff sets forth alternate claims for legal damages and equitable restitution.

36. Similarly, as set forth herein, Ally's material deceit and misrepresentations made in regards to the ability of Plaintiff to purchase the vehicle in case of the total loss are ongoing and, accordingly, represent an ongoing threat to Plaintiff, the Class, and members of the general public who have not yet (but who are likely to) come into contact with Ally's misrepresentations, and who risk becoming injured thereby. Plaintiff seeks, on behalf of himself, the Class, and the general public, an injunction prohibiting Ally from refusing to allow lessees to buy out their vehicles after total loss; and also prohibiting Ally to accept funds from insurance companies in excess of an amount of the remaining loan on the vehicles. Specifically, Plaintiff seeks the Court's determination that insurance companies shall pay out the loan amount to the Ally and excess funds to the insured lessees as their equity.

## CLASS ACTION ALLEGATIONS

**Class actions**:

37. Plaintiff brings this action as a class action on his behalf and behalf of all others similarly situated under Federal Rule of Civil Procedure 23, for declaratory judgment, restitution, injunctive relief, damages, costs, and attorneys' fees.

38. Plaintiff brings this class action lawsuit on behalf of himself and the proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following group of similarly situated persons (the "Class"), defined as follows:

**All persons who leased vehicles under Ally's Lease Agreement, suffered a total loss of their vehicles, and then were denied by Ally their "right to purchase" option under the Terms of Lease Agreement and State's Consumer protection statutes, thus preventing them from receiving an equity portion in their vehicles.**

The Class includes the following Subclasses:

a) **Subclass A**: All persons who leased vehicles under Ally's Lease Agreement in California, suffered a total loss of their vehicles and then were denied by Ally their "right to purchase" option under the terms of the Lease Agreement and *Section 2987 of the California Civil Code, the Moscone Vehicle Leasing Act*, thus preventing them from receiving an equity portion in their vehicles.

b) **Subclass B**: All persons who leased vehicles under Ally's Lease Agreement in other States of the USA, suffered a total loss of their vehicles and were denied by Ally their "right to purchase" option under the terms of the Lease Agreement and each individual lessee's state's Consumer Protection Vehicle Leasing Act, thus preventing them from receiving an equity portion in their vehicles.

Plaintiff reserve the right to amend or modify the Class and Subclass definitions with greater or further division into sub-class or limitation to particular issues.

39. The members of the Class are so numerous that the joinder of all members is impracticable. On information and belief, there are in excess of a thousand members of the Class. Discovery will reveal, through Ally's records, the approximate number of Class members. However, the class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable and the total damages will exceed $5,000.000.

40. Common questions of law and fact exist to all members of the Class, which predominate over any questions that may affect individual Class members. Among the questions of law and fact common to the Class are the following:

   i. Whether Ally's policy of prohibiting lessees from buy-outs of their vehicles after accidents that resulted in total loss caused Plaintiff and the Class to suffer economic harm;

   ii. Whether Ally's actions were in violation of the California Moscone Vehicle Leasing Act Section 2987 or any similar Consumer Protection Statutes of other States.

   iii. Whether Ally violated California Business and Professions Code §§ 17200, et seq.;

   iv. Whether Ally's misrepresentations and deceit are material to reasonable consumers;

   v. Whether Plaintiffs and the Class are entitled to restitution or damages and if so, the court may establish that the appropriate measure of damages is the difference between the Pay-Off amount and the Fair Market Value of the Vehicle as determined by insurance companies/authorized appraisals;

   vi. Whether Ally's actions violate federal and California laws invoked herein;

   vii. Whether Ally engaged in the behavior knowingly, fraudulently, recklessly, or negligently; and,

   viii. Whether Class and Subclass members entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages plus interest thereon and if so, what is the nature of such relief?

41. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

42. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Ally. Prosecution as a class action will eliminate the possibility of repetitious litigation.

43. The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members.

44. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

45. The Class is readily definable and prosecution as a class action will eliminate the possibility of duplicative litigation, while also providing redress for claims that would otherwise be too small to support the expense of individual complex litigation.

46. Class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Ally would likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, and/or otherwise escape liability for their wrongdoing.

47. Ally was unjustly enriched to the detriment of the Class, entitling the Class to disgorgement of all monies resulting therefrom;

48. The Class is entitled to restitution and/or disgorgement, in addition to, or as a substitute for, damages under California law.

49. Plaintiff's claims are typical of the Class because all members of the Class were injured, and may continue to be injured, in the same manner by Ally's unlawful, anticompetitive and inequitable methods, acts, and practices.

50. Unless addressed, Ally's practices will continue and the Class will be further harmed in the future.

51. The class damages are similar and ubiquitous.

## PLAINTIFF'S EXPERIENCE

### Actions of the Dealer

52. On 10/19/2019 Plaintiff entered an Agreement to lease a 2020 ALFA ROMEO GIULIA (Plaintiff's vehicle) from MASERATI & ALFA ROMEO OF PUENTE HILLS Dealership for 36 months. In order to take possession of the car, Plaintiff had to sign a MVLA that was provided by Ally.

53. On 10/19/2019, Plaintiff could not read the MVLA because it was in very small font. Plaintiff agreed to sign the MVLA based solely on statements made by Dealer.

54. Ally's MVLA was non-compliant with ADA basic rules of the minimum form of legal document construction, including the font size, paragraph, language, etc.

55. Dealer never offered Plaintiff any explanation of legal terms that were impossible to understand by lay persons.  Dealer applied pressure and coercion methods in order to persuade Plaintiff to sign the contract without ever explaining the terms.

56. Plaintiff detrimentally relied on Dealer's representations and signed the MLVA.

### Actions of Ally

57. On 05/28/2021, Plaintiff was involved in a traffic accident that resulted in the total loss of his vehicle.  His insurance company, Geico, following Cal. Regulation R 2695.8 of the Fair Claims Practice Act, sent an inquiry to Ally as to the amount of Plaintiff's outstanding balance in order to split the payment.

58. As stated prior, due to the above-mentioned factors of used car market appreciation, at the time of the accident, the market value of Plaintiff's vehicle was apprised by Geico to be **$39,862.94**; at the same time, the residual balance on

1  Plaintiff's loan according to Ally was **$29,369.23**, thus leaving Plaintiff **$10.493.71** in
2  equity.
3  59.  Ally became aware of the amount of appraisal of $39,862.94 and sent Geico a
4       demand for the full appraised value.
5  60.  Despite numerous attempts by Plaintiff to persuade Geico to send him the equity
6       portion, Geico forwarded the entire amount to Ally.

## FIRST CAUSE OF ACTION

**Unfair Business Practices in Violation of Business & Professional Code §17200.**

61.  Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

62.  Plaintiff and the class suffered an economic injury due to Ally's policy.

63.  Under UCL, a plaintiff has standing by establishing he or she surrendered in a transaction more or acquired in a transaction less than he or she otherwise would have. Cal. Bus. & Prof. Code § 17204. Here, Plaintiff and the Class were in a position to receive the benefit of the appreciation of their leased vehicle but were wrongly deprived of such benefit by Ally.

64.  Ally committed acts of unfair business practice, as defined by sections 17200, et seq. of the California Business and Professions Code.

65.  The Unfair prong of the UCL creates a cause of action for business practice that is unfair even if not proscribed by some other law. Here, Ally's practice was unfair to Plaintiff and the Class in denying them their right to enjoy the benefit of the appreciation of their leased vehicles.

66.  Ally's aforementioned practices, which Ally continues to use, to receive significant financial gain, also constitute unlawful competition.

67.  Ally engaged in the deceptive and fraudulent practice of misleading consumers to forfeit their equity.

68. In its acts of misleading consumers regarding their rights to receive equity in vehicles, Ally violated other state and federal laws related to misrepresentation, including the Moscone Act. It is unlawful for Ally to be engaged in the deceptive practice of misleading consumers to obtain more profit.

69. Ally violated the UCL by knowingly and intentionally refusing to allow lessees to purchase vehicles that is contrary to the provision in MVLA Sec. 32 that allows purchase that at any time and in any condition, and California Moscone Vehicle Leasing Act Section 2987.

70. Furthermore, Ally made misleading and deceitful statements related to the alleged MVLA's provisions requiring Plaintiff and Class Members to surrender and forfeit their rights so only Ally would be entitled to the profit.

71. Those statements were false and misleading. Such statements caused Plaintiff and the Class to be deprived of money and/or property to which they had a cognizable claim.

72. Plaintiff and the Class detrimentally relied on statements made by Ally thus, suffering an injury in fact and economic losses.

73. Business & Professions Code §17200 provides that: "…. unfair competition shall mean and include any unlawful or fraudulent business act or practice." The acts of omissions, and misrepresentations, together with practices of deceit by the Ally, as alleged herein, constitute a continuous and continuing course of conduct of unfair competition by means of unfair; unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, section 17200, et seq."

74. Plaintiff and members of the Class were misled by the misrepresentations made by Ally. They were led to believe that they lost their right to buy vehicles after total loss and the only option was to surrender their equity to Ally

thus, losing profit. Plaintiff and members of the Class were misled and coerced into surrendering their rights to Ally as alleged above.

75. An unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Here, Ally's actions fit under such a definition. Ally coerced the Class to surrender their rights to Ally thus depriving the Class of receiving profit. Simply put, Ally grabbed lessees' money by deceiving Plaintiff and Class.

76. As a direct and proximate result of such actions, Plaintiffs and the other Class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive, and misleading practices in an amount that will be proven at trial.

77. Ally has been and continues to be unjustly enriched as a result of their wrongful conduct.

78. The Class is accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Ally as a result of such business practices.

## SECOND CAUSE OF ACTION

**Violation of California Moscone Vehicle Leasing Act Section 2987**

**Interference with Potential Economic Advantage and Contractual Relations**

79. Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

80. Intentional interference with contractual relations occurs when a party intentionally and by improper means damages the Plaintiff's contractual or other business relationships.

81. Moscone Act Cal. Civil Code § 2987 discusses a "…lessee's right to early termination of lease contract; conditions; notice." Under Cal. Civil Code § 2987,

consumers have the right to terminate their lease early at any time and for any reason as long as the money owed to the lessor is sufficient to cover the payoff amount of the lease.

82. In this case, Plaintiff entered into a valid contractual agreement with Geico Insurance for the policy of his vehicle and fully paid the premium.

83. On or about May 28, 2021, Plaintiff's Alfa Romeo was totaled due to an auto accident; Plaintiff then requested $10.493.71 as the payoff from Geico in the amount of his equity, equal to the difference between the market value of his car and his loan. However, Ally interfered and provided an exaggerated amount of unpaid loan as a demand for payment. Following Ally's directive, Geico forwarded the entire payment to Ally, including Plaintiff's equity portion. Ally refused to refund the equity to Plaintiff, causing damages.

84. Immediately after the accident, Plaintiff contacted Ally and requested to buy the car. Ally denied his request stating that under terms of the MVLA, Lessee lost his right to buy the car because it was a total loss.

85. In fact, there are no provisions in the MVLA that separate a total loss accident from any other kind of accident. Ally's actions were deceptive, fraudulent, and in violation of Moscone Act. Had Plaintiff been given a right to buy the car, he would be in the position of the owner to negotiate with Geico directly and collect the entire payout.

86. Improper means are actions that are independently actionable such as violations of federal or state law or unethical business practices including misrepresentation (among others).

87. Plaintiff individually purchased an insurance policy with Geico. He alone dutifully paid the entire premium; thus, he had an economic relationship with Geico to receive his equity in case of the accident (in this case $10.493.71.)

88. Ally enacted a deceptive policy first of convincing Lessees that based on the MVLA they lost their right to purchase the vehicles and then, representing insurance companies Ally is a rightful owner entitled to the entire payout. These policies of dealing with insurance companies were specifically designed to disrupt such business relationships and deny Plaintiff and Class their rightful profit.

89. Due solely to such a policy, the existing business relationship/contract between Plaintiff and Geico was violated and the funds went to Ally.

90. Because Plaintiff was denied his equity, he suffered economic harm.

91. Ally acted tortuously, intentionally, and improperly, using deceit and coercion.

92. It was reasonably foreseeable by Ally that acting in such a manner would expose people, such as the Plaintiff and Class, to harm. And in fact, Plaintiff and others similarly situated did suffer harm.

### THIRD CAUSE OF ACTION

### Violation of ADA

93. There are a number of standards that documents must meet to be considered ADA compliant—one of which is the font used in the documents. All documents must be designed to be readable by elderly people and people who are visually impaired.

94. Ally's form MVLA provided by the Dealer failed to satisfy the ADA requirements on many levels: it was printed in an unsuitable small font making it impossible to read for a person of any age. A copy of the MVLA is attached as an exhibit to this complaint and is self-explanatory. Ally's MVLA is not compliant with the ADA norms and thus, prejudicial to elderly people, people with disabilities and public at large. Plaintiff was harmed by Dealer's actions and suffered damages.

## FOURTH CAUSE OF ACTION
## FRAUD AND DECEIT

95. Ally's representations regarding lessees', including Plaintiff's, ability to purchase their vehicle in case of total loss was fraudulent and constitutes material deceit. Ally misrepresenting Sections of the Agreement, and provided false "legal" opinions regarding the rights of lessees under the MVLA. Under no circumstances does the MVLA provide for exclusion of the right to buy a car in case of a total loss. MVLA also does not give Ally the right to receive and keep funds in excess of the outstanding balance, i.e. for a windfall to Ally. That was not a part of the intentions of the parties at the time of signing the MVLA. Any funds in excess of the outstanding balance at the time of payoff do not belong to Ally regardless of how they were sent to Ally. The excess fund must have been refunded automatically as an overpayment. Acceptance by Ally of any amount exceeding the loan balance and then refusal to refund it represents fraud, theft, and/or conversion.

96. Ally used Dealer as an accomplice in its fraudulent scheme. The MVLA provided by Ally and accepted by the Dealer was defective in form and substance. The Dealer should have raised its objections.

97. In this case, Dealer was pushing Plaintiff to sign the MVLA on the spot knowing that California does not have a "cooling off period".

98. Actions of the Dealer directed to entice consumers to sign illegible legal document is in violation of the 29 USC §6101 the Age Discrimination Act. It is especially prejudicial to elderly and/or visually impaired person who had to rely on Dealer's representations.

99. Dealer failed to explain the terms of the MVLA to Plaintiff. Dealer applied pressure and coercion techniques to expedite the signing of the MVLA. Dealer failed to obtain Plaintiff's understanding and informed consent because MVLA's terms

were written in legal language not widely known and understood by a lay person. Plaintiff was harmed by Dealer's actions and suffered damages.

100. Both defendants, Ally and Dealer, acted tortuously, intentionally, and improperly, using fraud, deceit, and coercion.

101. It was reasonably foreseeable to both Defendants that acting in such a manner would expose people, such as the Plaintiff and Class, to harm. And in fact, Plaintiff and others similarly situated suffered harm.

## DAMAGES

102. As the direct and proximate results of the wrongful acts of Ally and Dealer, Plaintiff and the Class have suffered general, special, incidental, and consequential damages as would be anticipated to arise under the circumstances. In addition, because of the alleged intentional fraud, concealment, misrepresentation, and deceit, Plaintiff and the Class are entitled to punitive damages, which shall be fully proven at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and those similarly situated, respectfully requests that the Court enter judgment against Ally and Dealer as follows:

1. Certification of the Proposed Class, including the appointment of Plaintiff's counsel as class counsel;
2. An order temporarily and permanently enjoining Ally from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint; Ally's acts of unfair and unlawful practices as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.
3. That judgment may be entered in favor of Plaintiff and against both Defendants;

4. That the Court adjudged and decreed that both Defendants' conduct, deceit, or combination violates the Unfair Competition Law, section 17200, et seq. of the Business & Professions Code;

5. An award of damages trebled, in an amount according to proof;

6. An award of compensatory and punitive damages in an amount to be determined at trial;

7. An award of restitution, including disgorgement of profits obtained by Ally as a result of their acts of unjust enrichment, or any acts in violation of state antitrust or consumer protection statutes and laws, including section 17000 of the Business & Professions Code;

8. An award of pre-and post-judgment interest, and that the interest is awarded at the highest legal rate from and after the date of service of the initial Complaint in this action;

9. For the costs of suit incurred and reasonable attorney's fees; and,

10. That the Court grants other legal and equitable relief as it may deem just and proper under the circumstances, including such other relief as the Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands trial by jury for all causes of action, claims, or issues in this action that are triable as a matter of right to a jury.

Dated: July 23, 2022                     THE LAW OFFICES OF LEON OZERAN

                                         /s/ Leon Ozeran
                                         Leon Ozeran, Esq.,
                                         Attorney for Plaintiff